UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

PAUL G. CAVANAUGH, and             Case No. 06-57992-WS
CINDY M. CAVANAUGH,                Chapter 7

            Debtors.
_____/

## **OPINION DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS**

### **I. Introduction**

Before the Court is the United States Trustee's ("UST") Motion to Dismiss Under 11 U.S.C. § [sic] 707(b)(3) of the Bankruptcy Code, filed March 9, 2007.[1] The issue under § 707(b)(3) (where the presumption of abuse does not exist or has been rebutted) is whether the totality of the circumstances demonstrate abuse. There are no material factual disputes.

### **II. Facts**

Paul and Cindy Cavanaugh (the "Debtors") filed for chapter 7 protection on December 5, 2006. At the time of filing, the Debtors had two teenage children in the home. The UST filed this Motion based entirely on the argument that some of Debtors' Schedule J expenses were inappropriate or overstated to the point that if more properly stated they would be such as would produce sufficient income to fund a chapter 13 plan - thus permitting a finding of abuse. The Debtors' filed Schedule I shows monthly income of $5,304.42. Filed Schedule J shows monthly expenses of $5,295.46. The listed monthly expenses the UST takes issue with are: (1) $1,100 for food; as opposed to the $868

---

1. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Publ. L. No. 109-8, § 102(a) (2005), became effective in cases filed on or after October 17, 2005. All code section references are to Title 11 as amended by BAPCPA.

that the Trustee asserts the IRS lists as allowable for a family of four;[2] (2) $440 in charitable contributions; when as opposed to past monthly charitable contributions which averaged $158 in 2005 and $187 in 2006 - the Trustee asserting the proper figure to $187; (3) $50 for contingencies; which the Trustee asserts should be entirely eliminated; (4) $75 for school activities; which the Trustee would reduce to $50; (5) $225 to repay a 401(k) loan (which the Trustee argues should be eliminated); (6) the Debtors' continued monthly $105 401(k) plan contributions; (which the Debtors have now voluntarily ceased), and (7) Debtor's claimed an increase in monthly transportation expenses from $325.00 to $400.00 due to the rising fuel prices; an increase which the Trustee says is no longer economically justified. The net effect of the Trustee's position is to make available some $824.00 per month to pay into a chapter 13 plan.

### III. Totality of the Circumstances

For cases in which the presumption of abuse does not arise or is rebutted, the Court must consider whether under the totality of the circumstances, granting relief would be an abuse of chapter 7. 11 U.S.C. § 707(b)(3). Prior to the BAPCPA, a case could be dismissed for "substantial abuse." *In re McIvor*, 2006 WL 3949172, at *4 (Bankr. E.D. Mich. Nov. 15, 2006). The modifying word "substantial" was deleted under BAPCPA and courts have found that the "standard for evaluating abuse under . . . the new act is identical to the standard used for determining 'substantial abuse'" under the old act. *Id. See, also In re Travis*, 353 B.R. 520, 530 (Bankr. E.D. Mich. 2006); *In re Zaporski*, 2007 WL 1186032, at *11 (Bankr. E.D. Mich. April 17, 2007). In *In re Krohn*, 886 F.2d 123, 126-27 (6th Cir. 1989), the court, while stating that "it is not possible . . . to list all the

---

2. "National Standards for Allowable Living Expenses," http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/national_expense_standards.htm.

factors that may be relevant to ascertaining a debtor's honest" courts, should consider (1) the debtor's good faith and honesty in filing his or her schedules; (2) eve of bankruptcy purchases; (3) unforseen catastrophic events that forced the debtor into chapter 7; (4) the debtor's ability to repay his or her debts out of future income; (5) stability of income; (6) state remedies; (7) debtor's ability to reduce expenses; and (8) the eligibility for chapter 13 relief.  The UST's position is that there is an ability to make the indicated adjustments to expenses, warrants dismissal of the case under 707(b)(3), emphasizing that those downward adjustments create an ability to pay creditors out of future earnings, thus meeting its view of the dominance of that factor under *Krohn*.[3]  The UST does not essentially claim any other *Krohn* factors that warrant dismissal.

## IV.  Discussion

### (A).  Charitable Contributions and 401(K) Loan

The bulk of the expenses with which the UST disagrees involve charitable contributions and repayment of a 401(k) loan.

There is a Code provision, arising in a somewhat different context, that states that "[i]n making a determination whether to dismiss a case under this section, the court *may not* take into consideration whether a debtor has made, or continues to make, charitable contributions." 11 U.S.C. § 707(b)(1) (emphasis added).  However, increases in such at or near the time of filing are somewhat suspect.  The Court also notes that even the largest of the amounts scheduled are less than would be allowed under a confirmable chapter 13 plan. 11 U.S.C. § 1325(b)(2)(A)(ii) (allowing as a reasonable and necessary expense of a charitable contribution up to 15% of gross income).

---

3.  For an elaboration of this Court's views on the meaning and interpretation of *Krohn*, reference is made to this Court's opinion dated July 25, 2007, in the case of *In Re Shelby*, 06-48745.

As to the repayment of the 401(k) loan of $225 a month, it is to be noted the Code specifically states that the repayment of 401(k) loans shall not be considered disposable income with regards to a confirmable chapter 13 plan. 11 U.S.C. § 1322(f) ("[A]ny amounts required to repay [a loan described in section 362(b)(19)] shall not constitute 'disposable income' under section 1325."). In the context of rebutting the presumption of abuse, some courts have found that the payments on 401(k) loans are expenses that qualify as special circumstances. *In re Lenton*, 358 B.R. 651, 662 (Bankr. E.D. Pa. 2006) (allowing 401(k) loan repayment to be a special circumstance, but ultimately dismissing under a totality of the circumstances because evidence showed that the loans would be repaid in full within the plan period allowing a substantial amount to be paid to creditors). The court in *In re Croskey*, 2007 WL 1302571, at *2-3 (Bankr. N.D. Ohio May 1, 2007) however, relied on pre-BAPCPA precedent from the Sixth Circuit for the proposition that payments on a 401(k) loan cannot be excluded from disposable income. (Citing to *In re Harshbarger*, 66 F.3d 775 (6th Cir. 1995) which applies to 401(k) contributions and loan payment). The Court believes that the references to the various chapter 13 plan provisions, while not directly applicable to 707(b)(3) inquiries as such, are at least instructive as to general statutory intent and thus the weight and importance that should be accorded to those items in the 707(b)(3) totality of circumstances inquiry; i.e., those statutory provisions tend to reduce the weight and importance to be afforded those items. In this case, where such items constitute the bulk of if not the whole of the Trustee's position the Trustee's argument is thus undercut.

**(B). Remaining Items**

The Debtors' indicated food budget allows for an average of less than $10 per day per family member which this Court does not find abusive. That an expense, such as food for instance, exceeds

certain recognized or referred to guidelines or tables (unless the statute in effect says for the purpose at hand those are controlling) is proper cause for inquiry and possibly even suspicion. That said, however, such does not necessarily require a finding of abuse as to that item. Nor does this Court find it abusive to set aside $50 for emergencies or contingent expenses. Some money for unspecified emergencies is not unreasonable given life's uncertainties and economic unpredictabilities. Nor is the $75 a month for their children's school activities excessive. Moreover, as the inquiry is one of totality, one needs to either derive a sense of some pattern involving different items or a general sense of abusive intent before finding dismissible abuse, even in a situation where one or two items are demonstratably excessive. Even as to the latter one must ask at what point does excessiveness become "abuse?" The complained of expenses in this case are not comparable to the spending found in *Krohn*, where the debtor, who had a non-filing spouse and no children, was claiming in their original budget $435 for recreational expenses, and in their amended budget a recreational expense of $110, plus miscellaneous expenses of $200, and miscellaneous gift expense of $140, in the context of other adverse facts as part of a totality present there but not present here.

## V. Conclusion

In almost every 707(b)(3) case primarily revolving around the expense side of the ledger, there is room to argue that this or that expense could or should be lower, and thus the Court is obligated to in effect recast each Schedule J to what by some objective and appropriate standard or ascertainable norms each and every questioned expense item should be and then see if the net arithmetic result is availability of income to fund a chapter 13 plan, and, if so, thereby mechanically conclude the existence of dismissible abuse. Without even discussing the difficulties and complexities of finding or choosing the right objective and appropriate standard or norms, the general intent of

5

BAPCPA to eliminate perceived abuses and push more debtors toward paying their creditors, does not mandate that type of inquiry and result, nor is it consistent with the required totality of circumstances analysis. One cannot ignore the expense side of the ledger as an indicator of possible abuse, but must evaluate the questioned individual expense items taking into account the circumstances of the debtor(s) involved and variations that such might produce, as well as the extent of such, and any discernable patterns of behavior, if they exist, and consider them all in the context of the other facts in the case. That is how this Court perceives its obligation under the statute and by which it has reached its conclusion.

While the Court believes these Debtors could very well engage in some belt tightening which would hold out the possibility of payments to creditors through a chapter 13 plan (and indeed such might be the "right thing to do"), the Court cannot conclude on the totality of this record and these facts, that their failure to do so amounts to abuse which requires dismissal of the case. Accordingly, the Motion is denied.

**Signed on August 23, 2007**

                                              **/s/ Walter Shapero**
                                   **Walter Shapero**
                                   **United States Bankruptcy Judge**